719 A.2d 190 (1998)
315 N.J. Super. 535
STATE of New Jersey, Plaintiff-Respondent,
v.
Neal MURRAY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 1998.
Decided October 30, 1998.
*191 Ivelisse Torres, Public Defender, for defendant-appellant (Kevin G. Byrnes, Designated Counsel, of counsel and on the brief).
Defendant-appellant filed a pro se supplemental brief.
Peter Verniero, Attorney General, for plaintiff-respondent (Catherine A. Foddai, Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, BROCHIN and KLEINER.
The opinion of the court was delivered by KLEINER, J.A.D.
Defendant, Neal Murray, appeals from the denial without an evidentiary hearing of his petition for post-conviction relief. Under the factual circumstances set forth in this particular petition, we conclude defendant was improvidently denied the opportunity to demonstrate that he was denied effective assistance of counsel when he was sentenced to a custodial term of imprisonment. We reverse and remand for an evidentiary hearing.
Tried to a jury, defendant was convicted of the following crimes: robbery, contrary to N.J.S.A. 2C:2-6 and N.J.S.A. 2C:15-1 (counts one, two and three); aggravated sexual assault, contrary to N.J.S.A. 2C:2-6 and N.J.S.A. 2C:14-2a (count four); possession of two handguns with the purpose to use them unlawfully, contrary to N.J.S.A. 2C:2-6 and N.J.S.A. 2C:39-4a (count five); and possession of a knife for an unlawful purpose, contrary to N.J.S.A. 2C:2-6 and N.J.S.A. 2C:39-4d (count six).
At sentencing on March 4, 1988, the trial judge merged defendant's conviction on count five into defendant's convictions on counts one, two, and three. Defendant's conviction on count six was merged into the convictions on counts one and four. His conviction on count three was merged into the convictions on counts one and two. The judge then sentenced defendant to concurrent twenty year terms of imprisonment with ten years of parole ineligibility on counts one, two, and four. The judge also ordered each sentence to be served concurrently with a separate sentence imposed on an unrelated indictment.
Defendant's conviction and the sentence imposed were affirmed in an unreported decision, A-3725-87T7, on December 28, 1988. In that decision we offered the following summary:
The convictions arose from the armed robbery of a Pizza Hut restaurant in Hamilton Township by two armed men dressed in ski masks. Defendant's guilt was overwhelmingly proved by the testimony of his confederate, amply confirmed by defendant's own statements and real evidence in the form of weapons and loot recovered from defendant, a ski mask and gloves found nearby when he was arrested and a revolver and ski mask were recovered from his confederate [John Sheil].
Certification was denied on February 9, 1989. Thereafter, on August 14, 1990, defendant's petition for a writ of habeas corpus in the Federal District Court was denied; the order entered that same date provided, in part, "[t]here is no probable cause for appeal."[1]
Defendant filed a petition for post-conviction relief on December 10, 1995. Essentially defendant contended that the trial judge committed reversible error in the jury charge on the issue of accomplice liability and that he was denied effective assistance of counsel in that: (1) his trial attorney never communicated to him a favorable plea offer received prior to trial and (2) his trial counsel had a conflict of interest with counsel for co-defendant, John Sheil.
Recognizing the five-year time-bar to post-conviction relief proceedings, R. 3:22-12,[2] defendant *192 attempted to demonstrate excusable neglect by arguing: (1) his lack of legal knowledge; (2) his having been led "astray" by his original counsel who had advised him as to the futility of continuing litigation; and (3) his having been led "astray" by the inclusion in the Federal Court order denying his petition for a writ of habeas corpus of a determination that "there is no probable cause to appeal."
The motion judge concluded that defendant's petition for post-conviction relief was time-barred, having been filed seven years and nine months after his conviction. R. 3:22-12. The judge also determined that defendant had not shown excusable neglect for the delay and specifically rejected defendant's claim that his lack of legal education should excuse his delay or that his trial counsel's advice or the wording of the Federal Court order justified or excused defendant's delay. Additionally, the judge noted that defendant's claims of trial error were barred by R. 3:22-4, as those errors could have and should have been raised on direct appeal. The judge dismissed defendant's petition without an evidentiary hearing.[3]
On appeal, defendant raises four points of error:[4]
POINT I
THE PROCEDURAL BAR TO THE DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF SHOULD HAVE BEEN RELAXED.
POINT II
THE DEFENDANT'S TRIAL ATTORNEY HAD A CONFLICT OF INTEREST.
POINT III
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PART 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE PCR COURTS REFUSAL TO HOLD A POST-CONVICTION RELIEF EVIDENTIARY HEARING TO ADJUDICATE THE DEFENDANT'S CLAIM THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
POINT IV
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PART 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED WHEN THE TRIAL COURT ERRED IN ITS LEGAL INSTRUCTIONS TO THE JURY: THE INSTRUCTION ON ACCOMPLICE LIABILITY WAS INCOMPLETE AND ERRONEOUS.
We agree with the motion judge's conclusions: that any judicial error at the time of trial should have and could have been raised by defendant in his direct appeal, R. 3:22-4, and with her general conclusion that petitioner's petition was time-barred, R. 3:22-12, and her conclusion that defendant's reasons offered to justify his untimely petition were without merit. However, we conclude that defendant's contention that he was deprived of effective assistance of counsel due to his counsel's conflict of interest warrants an evidentiary hearing because the conflict of interest renders the sentence illegal. See State v. Preciose, 129 N.J. 451, 609 A.2d 1280 (1992).
Defendant's claim alleges a "[s]ubstantial denial in the conviction proceeding of *193 defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey," R. 3:22-2, and as such, if established, it taints defendant's entire trial and renders the sentence thereafter imposed illegal within the purview of R. 3:22-12, which provides, in part: "[a] petition to correct an illegal sentence may be filed at any time." See State v. Levine, 253 N.J.Super. 149, 155-56, 601 A.2d 249 (App.Div.1992); State v. Paladino, 203 N.J.Super. 537, 549-50, 497 A.2d 562 (App.Div.1985).
We specifically part ways with the motion judge's analysis of defendant's claim of ineffective assistance of counsel arising from an alleged conflict of interest between defendant's counsel and counsel for Sheil, his co-defendant.
In defendant's post-conviction petition, he alleged that his assigned trial counsel, Jules Kollar, Esq., had a conflict of interest with his co-defendant's counsel, Nicholas Stroumtsos, Jr., Esq.[5] The full extent of the alleged conflict of interest was not detailed in defendant's initial petition or in the certification he filed in support of his petition. It is evident from the record on appeal that defendant's petition was amplified by additional pleadings filed with the motion judge by defendant's assigned counsel; however, the amplification has not been included in the record on appeal. We are, however, able to glean the exact nature of defendant's contentions from the motion judge's decision denying defendant's petition. More precisely, defendant asserted that as of the date of his indictment, he was represented by Frances Hartman, Esq., and Sheil was represented by Stroumtsos.
Prior to defendant's trial, Sheil entered into a plea agreement with the State. In exchange for Sheil's plea of guilty to one robbery count of the indictment and his agreement to testify for the State at defendant's trial, the State agreed to recommend that Sheil be sentenced to a custodial term of fifteen years with a seven and a half year period of parole ineligibility. Sheil was sentenced after defendant's trial.
Defendant asserted that as of the date of his indictment he was represented by Frances Hartman, Esq., and Sheil was represented by Stroumtsos. Prior to defendant's trial, Hartman, defendant's counsel, withdrew. Defendant then retained Kollar, who represented him at trial and sentencing. In defendant's petition for post-conviction relief, he asserted that Kollar shared an office and a telephone with Stroumtsos and that their relationship violated the precepts enunciated in State v. Bellucci, 81 N.J. 531, 410 A.2d 666 (1980), and the Rules of Professional Conduct, particularly, RPC 1.7.[6]
The motion judge rejected defendant's contention, stating:

*194 Petitioner makes much of the fact, but does not support it with anything other than photocopied pages of a New Jersey Lawyer's Diary which indicates that in 1988 that the attorneys shared the same address. It does indicate that they shared one office space, or perhaps a secretary or firm name. There is no indication that they were in fact anything more than partners in space, but not in the law firm. The address may have been for a large office complex or an office space shared by a number of attorneys. That is not an uncommon practice for solo practitioners.
Rather, it merely indicates the attorneys practiced out of the same building and for three years may have shared a phone number. The fact that the attorneys' phone number is the same for the years 88 and 90 is not the type of proof necessary for this court to find proof of a partnership with the association between the two attorneys which would in fact amount to a conflict of interest. Simply stated, petitioner has failed to provide credible evidence of the type necessary for this court to find that the attorneys were partners or associates.
After recognizing that defendant's contentions were premised on State v. Bellucci, 81 N.J. 531, 410 A.2d 666, the motion judge concluded:
In the case at bar, petitioner has not demonstrated prima facie entitlement to an evidentiary hearing with regard to the main issue, whether counsel was ineffective due to the alleged conflict of interest. Petitioner has not given any evidence in support of his claim that a conflict of interest should be presumed since he failed to demonstrate that Kollar and Stroumtsos were partners or were associated in any manner beyond their office sharing arrangement.
The motion judge also concluded that petitioner could not rely solely upon the alleged conflict but had the additional duty to demonstrate that his claim met the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed.2d 674 (1984), and adopted in New Jersey in State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987).
We conclude that the motion judge misread Bellucci, which established "an absolute bar to multiple representation unless defendants are fully advised of the potential problems involved," 81 N.J. at 545, 410 A.2d 666, and erred in dismissing defendant's petition without affording him an evidentiary hearing. In Bellucci, the Court reaffirmed its decision in State v. Land, 73 N.J. 24, 372 A.2d 297 (1977), that: "[O]nce a potential conflict exists, prejudice will be presumed in the absence of waiver, even if associated attorneys are involved instead of the same attorney." Bellucci, 81 N.J. at 543, 410 A.2d 666 (citing Land, 73 N.J. at 35, 372 A.2d 297). The Court also noted, "Such a presumption is necessary to protect adequately the `fundamental and absolute' right to effective assistance of counsel." Bellucci, 81 N.J. at 543, 410 A.2d 666 (citation omitted). It also stressed, "The harmful effects of a conflict of interest ... will not ordinarily be identifiable on the record. Requiring a showing of prejudice would place an impossible burden on the accused and force the reviewing courts to engage in `unguided speculation.'" Ibid. (citations omitted). It seems clear that once a defendant demonstrates his attorney's conflict of interest, no obligation is imposed on defendant to meet the two-prong test enunciated in Strickland or in Fritz.
The precepts enunciated in Bellucci were revisited in State v. Norman, 151 N.J. 5, 697 A.2d 511 (1997). In Norman, the Supreme Court premised its decision with this introduction:
The central issue in these two cases is the constitutional right to the assistance of counsel and the extent to which that right requires representation by counsel who is conflict-free. Each defendant alleges that the relationship between their attorneys created a prejudicial conflict of interest that necessitates reversal of their murder convictions. The two attorneys involved in representing defendants shared office space, eventually became partners, and were paid their fees by one of the defendants. In addition, one defendant's attorney appeared at the other defendant's arraignment, and representation of one defendant on appeal continued after *195 the actual formation of the partnership.

[Id. at 10, 697 A.2d 511.]
The Court, in reviewing its decision in Bellucci particularly noted:
Thus, whether the joint representation had occurred through a single attorney or by associated attorneys, "once a potential conflict exists, prejudice will be presumed in the absence of waiver." That per se rule was needed, we determined, because "[t]he harm in dual representation is caused by the restraints placed on attorney's advocacy, and independent judgment .... [and because] [t]he harmful effects of a conflict... will not ordinarily be identifiable on the record."
[Id. at 24, 697 A.2d 511 (citations omitted).][7]
Here, petitioner provided the motion judge with photocopies of pages of the New Jersey Lawyers Diary and Manual which listed Kollar's and Stroumtsos' addresses. The addresses were the same. The telephone number for each attorney was also the same.
Although it is not specifically clear under the facts here presented, the sharing of an office address and a common telephone number, that there was, in fact, a conflict within the purview of Bellucci or Norman, it is a fair inference that both Kollar and Stroumtsos utilized, if not employed, at least one individual who was responsible to answer telephone calls directed to each attorney. As noted in n. 7, supra, R. 1:15, sharing a common conference room or sharing a common law library and copy machine are sufficient to create a conflict between sole practitioners who maintain separate offices at a common address.
The record indicates Kollar represented defendant at trial and the testimony leading to defendant's conviction was offered by Sheil. Sheil negotiated a favorable plea agreement in exchange for his testimony at defendant's trial but had not yet been sentenced pursuant to his plea agreement. Stroumtsos, who then represented Sheil, ostensibly shared an office with Kollar. The potential conflict between Kollar and Stroumtsos was evident from the record as presented. Kollar's duty to attack the State's case against his client conflicted with Stroumtsos' duty to protect Sheil's favorable plea negotiation.
As noted in Bellucci, "The trial court is equally obligated to protect defendant's rights to effective assistance of counsel. When multiple representation is involved, the situation must be explored on the record both to ensure the defendant is aware of the potential hazards and to secure a proper waiver." 81 N.J. at 545, 410 A.2d 666. Here, in response to defendant's motion, the State did not assert that the motion judge adhered to the Bellucci mandate.
On defendant's petition for post-conviction relief it was incumbent upon the motion judge to recognize the apparent conflict and to afford defendant an evidentiary hearing to further elicit facts demonstrative of the conflict. See State v. Preciose, 129 N.J. 451, 609 A.2d 1280 (1992). As noted in Preciose, "[A] defendant's claim of ineffective assistance of trial ... counsel is more likely to require an evidentiary hearing because the facts often lie outside the trial record and because the attorney's testimony may be required." Id. at 462, 609 A.2d 1280. Our decision shall not be construed as concluding that in this instance there was, in fact, a conflict between defendant's counsel and counsel for his co-defendant. We leave resolution of that question to the motion judge. We merely conclude that the judge misconstrued Bellucci and failed to consider Norman, and that the issues raised by defendant were sufficient to require an evidentiary hearing. State v. Preciose, 129 N.J. at 462, 609 A.2d 1280.
Since a remand to the motion judge is required, we conclude that the motion judge *196 shall fully consider the merits of defendant's initial additional claim that he was denied effective assistance of counsel when his trial counsel failed to communicate a favorable plea offer to defendant prior to commencement of defendant's trial. In considering defendant's contention, the motion judge shall specifically determine whether the alleged failure of defendant's counsel, if proven, taints defendant's subsequent trial and renders the sentence thereafter imposed "illegal" within the purview of R. 3:22-12 so as to exempt that claim from the five-year limitation encompassed by that rule.[8]
Reversed and remanded for further proceedings.
NOTES
[1] Murray v. Rafferty, Civil No. 89-2650(CSF).
[2] R. 3:22-12 on "Limitations" provides:

A petition to correct an illegal sentence may filed at any time. No other petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.
[3] The motion judge did not specifically discuss defendant's claim that his trial counsel provided ineffective assistance in failing to communicate to defendant a favorable plea offer received from the State. We presume that the motion judge concluded this claim was time-barred. R. 3:22-12. The motion judge did discuss plaintiff's claim that he was denied effective assistance of counsel arising from a conflict of interest between his counsel and counsel for his co-defendant. Petitioner's specific claim and the motion judge's decision is discussed infra.
[4] In a pro se supplemental brief and appendix defendant amplified Points Two, Three, and Four of the merits brief filed on his behalf.
[5] Respondent erroneously spells counsel's name as "Stromtsos" in the brief.
[6] RPC 1.7 Conflict of Interest: General Rule, provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:
(1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and
(2) each client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
(c) This rule shall not alter the effect of case law or ethics opinions to the effect that:
(1) in certain cases or categories of cases involving conflicts or apparent conflicts, consent to continued representation is immaterial, and
(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.
[7] Our opinion is also buttressed by the rationale expressed in United States v. Stalks, No. 94-195, 1994 WL 606060 (D.N.J. Nov.1, 1994). The court discussed New Jersey Ethics Opinions construing New Jersey Court Rule 1:15, where the Committee defined "office associate" as including two attorneys who maintain separate offices but share a common conference room (New Jersey Supreme Court Advisory Committee on Professional Ethics, Opinion No. 74), and including the instance where a solo practitioner shared office space with a two-person partnership, paid rent to the partnership, and had use of the law library and the copy machine (New Jersey Supreme Court Advisory Committee on Professional Ethics, Opinion No. 185).
[8] Because this issue was not specifically briefed by either defendant or the State, we decline to consider the issue in this appeal.