744 A.2d 131

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
NEAL MURRAY, DEFENDANT-RESPONDENT.

Argued October 12, 1999—Decided January 25, 2000.

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for appellant (*John J. Farmer, Jr.,* Attorney General of New Jersey, attorney).

*Kevin G. Byrnes,* Designated Counsel, argued the cause for respondent (*Ivelisse Torres,* Public Defender, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal involves a belated post-conviction relief (PCR) petition. The primary issue raised is whether an alleged attorney conflict of interest converts a defendant's custodial confinement into an illegal sentence within the meaning of *Rule* 3:22–12, thereby removing the five-year time limit for filing a PCR application. The trial court held that the PCR petition should be dismissed as time-barred because the issues were, or should have been, raised and decided in the direct appeal. The Appellate Division reversed, concluding that the potential conflict of interest of defendant's attorney made the sentence illegal, thereby justifying a waiver of the five-year time limit. We disagree and hold that a potential conflict of interest by a defense attorney does not affect the legality of a sentence.

I.

Defendant and co-defendant John Sheil were indicted for robbing a Pizza Hut restaurant in Hamilton Township while armed with guns, and committing an aggravated sexual assault upon the assistant manager. Co-defendant Sheil pled guilty to first-degree robbery. Defendant elected to go to trial; a jury convicted him of aggravated sexual assault and two first-degree robberies. The trial court sentenced defendant on March 4, 1988 to concurrent twenty-year terms of imprisonment with ten years of parole ineligibility on the aggravated assault and the robberies. The judgment of conviction was affirmed on December 28, 1988 and this Court denied certification in February 1989. The United States Federal District Court for the District of New Jersey denied a writ of habeas corpus on August 14, 1990.

Defendant filed the present PCR application on December 10, 1995, some seven years and nine months after the judgment of

conviction was entered. He contended, among other things, that he received ineffective assistance of counsel. The basis for that claim was an alleged potential attorney conflict of interest arising from the fact that defendant's counsel and the attorney for the co-defendant shared office space and a telephone number during defendant's trial.

The trial court dismissed the PCR petition because it had been filed more than thirty-three months beyond the five-year time limit delineated in *Rule* 3:22–12. Nonetheless, the trial court addressed the merits of defendant's claims. It found unpersuasive the assertion of excusable neglect based upon defendant's lack of education in the law and the substantive allegation that defendant's attorney had a conflict of interest. The trial court found that defendant's threshold presentation failed to show the attorneys were sufficiently connected to support a claim of conflict under *State v. Bellucci*, 81 *N.J.* 531, 410 *A.*2d 666 (1980). Also, the court found that defendant failed to establish ineffective assistance of counsel under *Strickland v. Washington*, 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L.Ed.*2d 674 (1984), and *State v. Fritz*, 105 *N.J.* 42, 519 *A.*2d 336 (1987).

In a published opinion, the Appellate Division reversed. 315 *N.J.Super.* 535, 719 *A.*2d 190 (App.Div.1998). The panel agreed with the trial court that defendant had not established excusable neglect; however, it disagreed with the trial court's finding that a potential attorney conflict of interest did not exist. The panel found that because the co-defendant was represented in his plea negotiations by Nicholas Stroumtsos, Jr., Esq., a lawyer who apparently shared an office and telephone with defendant's lawyer, Jules Koller, Esq., there was a potential violation of *Bellucci* and *Rule of Professional Conduct* 1.7. The Appellate Division reasoned that the potential conflict of interest made the sentence illegal, and as such, excused the thirty-three month delay in filing the PCR petition. Relying on *State v. Norman*, 151 *N.J.* 5, 697 *A.*2d 511 (1997), the panel held that once defendant had demonstrated that there was a potential conflict, he was not obligated to

meet the *Strickland v. Washington* test because prejudice is presumed upon the finding of a potential conflict. Because of the potential attorney conflict, the panel concluded that defendant's sentence was illegal and that under *Rule* 3:22–12, a petition to correct an illegal sentence may be filed at any time. We granted the State's petition for certification, 158 *N.J.* 75, 726 *A.*2d 938 (1999), and now modify and affirm.

## II.

The State argues that the Appellate Division erred in holding that defendant's claim of ineffective assistance of counsel based on a potential conflict of interest renders defendant's sentence potentially "illegal" under *Rule* 3:22–12. The State contends that to broaden the definition of an illegal sentence, as has the Appellate Division, would eviscerate the five-year bar and result in a backlog of old cases raising every imaginable potential error made by an attorney or a trial court. Such an interpretation of the definition of "illegal sentence," the State argues, directly conflicts with the finality-of-judgments policy that is so deeply rooted in our legal system.

## III.

The grounds upon which post-conviction relief may be granted are enumerated in *Rule* 3:22–2. Defendant sought relief based on his assertion that his attorney's conflicted representation in the pretrial and trial proceedings deprived him of "rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." *R.* 3:22–2(a). Although defendant's claim of conflicted representation, and hence ineffective assistance of counsel, was not required to have been presented in his direct appeal, *R.* 3:22–4(c); *State v. Preciose*, 129 *N.J.* 451, 459–61, 609 *A.*2d 1280 (1992), his PCR petition had to have been filed within five years of the March 4, 1988 sentencing date, unless the five-year time limit could be waived pursuant to *Rule* 3:22–12. That rule contains two exceptions to the five-year time limit: an illegal

sentence, or a "showing that the delay beyond [five years] was due to defendant's excusable neglect." *R.* 3:22–12.

Defendant attempted to satisfy both exceptions. The determination by the courts below that defendant did not satisfy the excusable neglect exception is supported by the record. *See State v. Locurto,* 157 *N.J.* 463, 470–72, 724 *A.*2d 234 (1999); *State v. Johnson,* 42 *N.J.* 146, 161–62, 199 *A.*2d 809 (1964). Defendant's assertion that he lacks sophistication in the law does not satisfy the exceptional circumstances required by *State v. Mitchell,* 126 *N.J.* 565, 580, 601 *A.*2d 198 (1992). *See also State v. Dugan,* 289 *N.J.Super.* 15, 22, 672 *A.*2d 1240 (App.Div.) (holding that misunderstanding the meaning of *Rule* 3:22–12 does not constitute excusable neglect), *certif. denied,* 145 *N.J.* 373, 678 *A.*2d 714 (1996). However, the Appellate Division concluded that defendant's counsel's "conflict of interest renders the sentence illegal," *Murray, supra,* 315 *N.J.Super.* at 540, 719 *A.*2d 190, thereby triggering the illegal sentence exception to the five-year time limit. That determination requires us to consider the meaning of an illegal sentence.

Although the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 2C:104–9 (Code), does not define the term "illegal sentence," the Code does specify the sentence or penalty for each offense and the authorized dispositions. *N.J.S.A.* 2C:43–2. Our court rules, which establish the framework for the filing and disposition of PCR petitions, have defined the meaning of "illegal sentence." According to the Rules, relief may be granted to a PCR applicant based on the "[i]mposition of [a] sentence in excess of or otherwise not in accordance with the sentence authorized by law." *R.* 3:22–2(c). That standard has been defined narrowly as applicable only to two types of situations distinct from the broader "excessive sentence" standard.

■ The first category covers sentences that exceed the penalties authorized by statute for a specific offense. *State v. Clark,* 65 *N.J.* 426, 436–37, 323 *A.*2d 470 (1974). For example, under the now repealed Title 2A sentencing scheme, a defendant was not

permitted to be sentenced to a term of ten to fifteen years for an offense that carried a maximum-permitted sentence of seven years. *State v. Matlack*, 49 *N.J.* 491, 502, 231 *A*.2d 369 (1967). The same is true under the Code. A sentence that exceeds the maximum penalty provided in the Code for a particular offense would be illegal.

A sentence may also be illegal because it was not imposed in accordance with law. This category includes sentences that, although not in excess of the statutory maximum penalty, may not be a disposition authorized by the Code. *N.J.S.A.* 2C:43–2a provides: "Except as otherwise provided by this code, all persons convicted of an offense or offenses shall be sentenced in accordance with [Chapter 43, *N.J.S.A.* 2C:43–1 to –22]." In addition, a sentence may not be in accordance with law because it fails to satisfy required presentencing conditions. For example, a defendant may not be sentenced to an indeterminate term in a youth correctional facility after having served a state or federal prison term without violating *N.J.S.A.* 30:4–147. *State v. Levine*, 253 *N.J.Super.* 149, 157, 601 *A*.2d 249 (App.Div.1992). A sentence is also not in accordance with law if it fails to include a legislatively mandated term of parole ineligibility. *State v. Baker*, 270 *N.J.Super.* 55, 70, 636 *A*.2d 553 (App.Div.), *aff'd*, 138 *N.J.* 89, 648 *A*.2d 1127 (1994); *State v. Copeman*, 197 *N.J.Super.* 261, 265, 484 *A*.2d 1250 (App.Div.1984). Regardless of whether a sentence is illegal because it exceeds the statutory maximum penalty authorized for such an offense or because it was not imposed in accordance with law, it may be corrected at any time before it is completed. *State v. Sheppard*, 125 *N.J.Super.* 332, 336, 310 *A*.2d 731 (App.Div.), *certif. denied*, 64 *N.J.* 318, 315 *A*.2d 407 (1973).

*State v. Preciose, supra*, relied on by the Appellate Division, does not support its holding. In that case we determined that "[i]neffective-assistance of counsel claims are particularly suitable for post-conviction review." *Preciose, supra*, 129 *N.J.* at 460, 609 *A*.2d 1280. The Court ruled that such claims will be afforded post-conviction review because they "often cannot reasonably be

raised in a prior proceeding." *Ibid.* The Court observed that although "considerations of finality and procedural enforcement count for little when a defendant's life or liberty hangs in the balance," procedural requirements continue to be significant. *Id.* at 476, 609 *A.*2d 1280. Therefore, the Court reaffirmed that, "other than challenges to the legality of a sentence, petitions for post-conviction relief must be filed within five years of the judgment or sentence in the absence of facts demonstrating excusable neglect justifying delay." *Ibid.* Thus, while *Preciose* refused to read the exceptions to *Rule* 3:22–4 narrowly, it applied *Rule* 3:22–12 in accordance with its plain meaning.

The Appellate Division's reliance on *State v. Paladino*, 203 *N.J.Super.* 537, 497 *A.*2d 562 (App.Div.1985), is similarly misplaced. Unlike the present case, *Paladino* involved a direct appeal from the denial of a timely motion to vacate guilty pleas and an untimely motion for a new trial based on a claim of lack of jurisdiction. *Id.* at 546–550, 497 *A.*2d 562. Because the motions or the appeal taken from their denial was filed out of time, the Appellate Division relied on *Rule* 1:1–2, not *Rule* 3:22–12, to vacate the convictions. The court found that the guilty pleas were taken from defendant without the assistance of counsel and without obtaining a proper factual basis. In addition, restitution was imposed without conducting a hearing. *Paladino, supra,* 203 *N.J.Super.* at 547, 497 *A.*2d 562. The court's references to the "illegal" nature of the sentences was an imprecise way of acknowledging the obvious due process violations that occurred during the guilty-plea proceedings. *Id.* at 549, 497 *A.*2d 562. The essence of the court's holding was to grant the motions to vacate the guilty pleas and have the defendant stand trial. Hence, *Paladino* is not persuasive authority regarding the meaning of illegal sentences.

We conclude that defendant's sentence was legal under the relevant statutory criteria. Defendant was convicted of two first-degree crimes, aggravated sexual assault and armed robbery, and sentenced to an aggregate term of twenty-years imprisonment with a ten-year parole ineligibility requirement. The ordinary

term for a first-degree crime is ten to twenty years under *N.J.S.A.* 2C:43–6a(1).

■ The reasons behind the rigorous five-year time limit for filing PCR petitions were articulated by this Court in *State v. Mitchell, supra.* First, the passing of time after a conviction increases the difficulties associated with a fair and accurate reassessment of the events. *Mitchell, supra,* 126 *N.J.* at 575, 601 *A.*2d 198. Second, respect for the finality of judgments and the undesirable uncertainty fostered by unlimited relitigation support the enforcement of a time bar on petitions. *Id.* at 576, 601 *A.*2d 198. Finally, the time bar encourages petitioners to file their claims early, and "discourages them from sitting on their rights until it is too late for a court to render justice." *Ibid.* The five-year period established by the Rule commences when the judgment of conviction is entered and is generally neither stayed nor tolled by an appellate or other proceeding. *State v. Afanador,* 151 *N.J.* 41, 52–53, 697 *A.*2d 529 (1997); *State v. Dugan, supra,* 289 *N.J.Super.* at 19, 672 *A.*2d 1240; *State v. Dillard,* 208 *N.J.Super.* 722, 727, 506 *A.*2d 848 (App.Div.), *certif. denied,* 105 *N.J.* 527, 523 *A.*2d 169 (1986).

■ In addition to concluding that defendant's sentence is not illegal, we hold that a claim of attorney conflict falls outside the definition of an illegal sentence.

## IV.

■ The final question presented is whether defendant is entitled to an evidentiary hearing to determine whether there was attorney conflict of interest. The Appellate Division concluded that such a hearing is required. We agree.

■ It is undisputed that a defendant has the right to counsel whose representation is unimpaired and whose loyalty is undivided. *Bellucci, supra,* 81 *N.J.* at 538, 410 *A.*2d 666. But not every potential attorney conflict rises to such an unacceptable level that it deprives a defendant of the right to effective assis-

tance of counsel. The relevant inquiry in potential conflict of interest situations is the potential impact the alleged conflict will likely have upon defendant. Although *Bellucci* held that "once a potential conflict exists, prejudice will be presumed in the absence of waiver," *id.* at 543, 410 *A.2d* 666, that holding has been read narrowly in later cases. In *State v. Bell*, 90 *N.J.* 163, 447 *A.2d* 525 (1982), the Court held that representation of co-defendants in the same criminal action by separate attorneys of the Public Defender's office did not give rise to a presumption of prejudice. The *Bell* Court concluded that where circumstances "demonstrate a potential conflict of interest and a *significant likelihood* of prejudice, the presumption of both an actual conflict of interest and actual prejudice will arise, without the necessity of proving such prejudice." *Id.* at 171, 447 *A.2d* 525 (emphasis added).

*Bellucci* is reserved for classic cases of conflict of interest, such as when the same attorney or partnership represents both parties to an action or two defendants in a criminal case and no waiver is obtained. *See State v. Norman*, 151 *N.J.* 5, 25, 697 *A.2d* 511 (1997). However, in other cases, the court examines the conflict of interest and evaluates the likelihood of prejudice. *See Norman, supra*, 151 *N.J.* at 25, 697 *A.2d* 511; *Bell, supra*, 90 *N.J.* at 171, 447 *A.2d* 525. In *Norman*, the Court found that partnership negotiations and shared office space did not give rise to a presumption of prejudice where the attorneys otherwise conducted their affairs separately by having "separate phones, secretaries, files, and bank accounts." 151 *N.J.* at 26, 697 *A.2d* 511. Based on the record in the present case, the two attorneys in question were not partners and did not claim to be associated in any way. They shared office space and a phone number. The record does not reveal whether other indicia of affiliation existed, such as the status of their finances, files, secretaries, bank accounts, and contracts. The present record, however, makes a *prima facie* showing that requires an evidentiary hearing before deciding whether a conflict of interest existed that may create a presumption of prejudice. A remand is therefore necessary.

If on the remand the trial court is convinced that an attorney conflict of interest existed that created a presumption of prejudice, the court should apply the injustice exception in *Rule* 1:1–2 and *Rule* 3:22–4(b) to overcome the five-year time limit of *Rule* 3:22–12. The "injustice" or "extenuating circumstances" exceptions were recognized in *Mitchell, supra,* 126 *N.J.* at 579–80, 601 *A.*2d 198. If the Court determines that the injustice or extenuating circumstances exception applies, it must then decide whether defendant was deprived of effective assistance of counsel. *See Strickland v. Washington, supra,* 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L.Ed.*2d 674 (1984). Because the conviction is now more than eleven years old, the trial court must weigh the purposes advanced by the five-year rule against the nature of defendant's claim and the potential harm presumed or realized in determining what, if any, relief should be granted. This approach is consistent with our observation in *Mitchell:* "Absent compelling, extenuating circumstances, the burden of justifying a petition filed after the five-year period will increase with the extent of the delay." 126 *N.J.* at 580, 601 *A.*2d 198.

The judgment of the Appellate Division is modified and affirmed. The matter is remanded to the Law Division for further proceedings consistent with this opinion.

*For modification; affirmance and remandment*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO—7.

*Opposed*—None.