**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0600-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSH POMPEY,

    Defendant-Appellant.

_____

Argued February 10, 2021 – Decided May 18, 2021

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 89-12-1594.

Eric V. Kleiner argued the cause for appellant (Eric V. Kleiner, attorney; Eric V. Kleiner and Rudie Weatherman, on the briefs).

John J. Scaliti, Legal Assistant, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Jaimee Chasmer, Assistant Prosecutor, of counsel and on the brief; John J. Scaliti, on the brief).

PER CURIAM

Defendant Josh Pompey appeals from two Law Division orders denying his petitions for post-conviction relief (PCR). We affirm.

A jury found defendant guilty of two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) (counts one and two); four counts of felony murder, N.J.S.A. 2C:11-3(a)(3) (counts three through six); aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3) (count seven); and aggravated assault, N.J.S.A. 2C:12-1(b)(5)(a) (count eight). Defendant was first charged with capital murder, resulting in a hung jury.

The next trial, a non-capital prosecution, took place between November 5, 1997, and March 9, 1998, and defendant was convicted of all charges. After appropriate mergers, defendant was sentenced to an aggregate two life terms plus twenty-one and one-half years, with a seventy-year and nine-month parole bar. Sentence was imposed on April 3, 1998, and the judgment signed April 8, 1998. On appeal, we affirmed. State v. Pompey, No. A-5772-97 (App. Div. May 17, 2004). The Supreme Court denied certification on June 22, 2005. State v. Pompey, 184 N.J. 211 (2005).

Defendant's convictions arose from the murder of his former girlfriend and her aunt. He broke into the victims' home through a basement window and waited there for the former girlfriend's return for several hours. Defendant

A-0600-17

confronted her about resuming the relationship; she became fearful and attempted to appease him to no avail. When her aunt came downstairs to inquire about the commotion, defendant, who had attempted to engage in sexual relations with his former girlfriend, stabbed them both. He unsuccessfully attempted to hotwire her car.

Defendant ran from the scene, hiding his clothing, including the gloves worn during the killing, along the way. In his confession, he directed police to the locations where the scattered clothing could be found. Cuts were observed on his left hand when he was processed at the jail, which defendant said were injuries from a kitchen knife on the day of the murders.

DNA testing established that defendant could not be ruled out as a major contributor, and the former girlfriend a minor contributor, to blood samples taken from inside her car and from his black pants. Additional items, found at the locations defendant identified, were also tested. The victim could not be ruled out as the major contributor and defendant the minor contributor, to blood found on his windbreaker and to blood stains found on a shirt in a dumpster. Additionally, defendant could not be ruled out as a contributor to the blood on the mattress and the victim's brassiere. Her boyfriend was excluded as a contributor to any samples.

A-0600-17

Defendant's pretrial <u>Miranda</u>[1] motion was denied. Among the grounds he raised for suppression of his statement was his limited IQ of 80. He later claimed the police bullied him, struck him, and kept him handcuffed during the interview.

Defendant filed his first PCR petition in January 2006, claiming that his experts were improperly barred from testifying as established by subsequent caselaw and news articles; the prosecutor engaged in misconduct during opening and closing statements; police tampered with evidence and conspired against him, as did the judges who presided over the case; the DNA evidence had been tampered with and was unreliable; he was wrongfully precluded from pursuing an investigation into the victim's boyfriend as a "bloody" fingerprint had been found on the utensil drawer (during the trial, the State's DNA expert said that although the boyfriend's fingerprint was found on the utensil drawer, it had no blood on it, and was not in a bloody area); the jury charge was erroneous; his confession was coerced and he should have been granted a <u>Miranda</u> rehearing after it was revealed that he had a handcuff on one arm when the stenographer transcribed his statement to police; the physical evidence against him should have been suppressed; the jury was prejudiced and engaged in misconduct; he

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

was wrongfully precluded from trying on one of two knit gloves he allegedly wore during the killing; he was wrongly denied discovery essential to his attack on the credibility of the investigating officers who testified against him; the serology log books were doctored by police and prosecutors; the prosecutor presented perjured testimony regarding photos taken of the victim's car; defense witness testimony regarding his reaction to "learning" of the victim's death was wrongfully precluded; there was judicial bias against him; and appellate counsel failed to advise him of PCR filing deadlines and was otherwise ineffective. Defendant also requested an evidentiary hearing and additional DNA testing.

The judge who heard the petition on September 28, 2007, ruled that it was time-barred, having been filed more than seven and one-half years after entry of the judgment of conviction. He considered defendant's claim of excusable neglect—based on appellate counsel's alleged failure to advise him of the time limits for filing for PCR—unavailing, as counsel had no duty to do so and no other exceptional circumstances existed. The judge also found the majority of defendant's claims to be barred under Rule 3:22-4 and 3:22-5 because either they were raised on direct appeal, or could have been raised on direct appeal, and recent caselaw and post-trial newspaper articles were not newly discovered evidence. The judge observed:

A-0600-17

[T]he only change between the defendant's arguments as presented today and those presented approximately ten years ago, is that the defendant has added myself and a three [j]udge Appellate [c]ourt [p]anel to the ever growing list of conspirators, which already includes the current Assignment Judge, two Superior Court [j]udges, the Bergen County Prosecutors office and the entire Hackensack Police Department. Accordingly, those arguments raised by the defendant which have already been adjudicated[,] are barred by Rule 3:22-5.

Despite finding no prima facie case had been established, the judge granted defendant's request for additional DNA testing. Defendant appealed, but requested a stay of appeal pending the new DNA results. On August 15, 2008, we dismissed defendant's appeal without prejudice, expressly authorizing him to file a new appeal after the additional DNA testing was completed.

The parties spent two years litigating which items would be submitted for additional DNA testing. Ultimately, a judge signed orders on November 19, 2009, and August 27, 2010, authorizing the testing, and in some cases the repeat testing, of: (1) the black pants; (2) the burgundy windbreaker; (3) the victim's boyfriend's red gym bag (which had been found in the trunk of the victim's car) and up to four items from the car; (4) a surgical glove; (5) the cut wires from the victim's car; (6) "[v]aginal, oral and anal swabs designated as SP 81, 82 and 83"; (7) the left and right hand gloves and defendant's sneakers (at the State's

6

election); (8) the plastic bag found in the woods; (9) the victim's bra; and (10) the brown belt. After the additional testing was completed, the appeal was not reinstated.

On September 9, 2011, defendant filed a motion for a new trial based upon news articles regarding one of the officers whose work was crucial to the investigation and who testified at trial. As a result of these news articles, defendant alleged, among other things, that the officer was in the mob, a liar, and a contract killer for hire. The motion was denied on February 1, 2012, because the claims were speculative and conclusory. That judge opined that if the application was treated as a PCR petition, it was time-barred.

On March 13, 2012, defendant filed a motion in our court under the initial PCR appeal docket number, asking that the issues be consolidated with his appeal of the denial of a new trial and any issues that might arise from the ongoing DNA testing. That motion was denied on April 9, 2012, because defendant's initial appeal had been dismissed and was never reinstated.

The additional DNA testing was completed February 7, 2014. Among other things, it established again that defendant was the main contributor of one of the blood stains on the black pants, and the main contributor to another blood stain, with the victim a minor contributor. The DNA testing also revealed that

A-0600-17

both the aunt and the boyfriend were excluded, and that defendant was the main contributor of the blood found on the cut wires in the victim's car.

No DNA was present on the left-hand glove. As a result, on April 13, 2015, defendant filed another petition for PCR, supported by a DNA, serology, and criminalistics expert. He sought the vacation of his convictions, further DNA testing, a new trial, or dismissal of the charges against him. Defendant claimed not only that the judge had improperly excluded his experts at trial, but he had improperly prevented him from exploring the criminality of the officers involved, as well as the status of the victim's boyfriend. In addition, defendant argued the new DNA test results indicating that only DNA belonging to the victim was found on the right glove meant that he was entirely innocent and his confession entirely false, while one of the principal officers in the investigation was "a serial mobster[,]" "a depraved monster[,]" and "[a] dirty cop[,]" who acted as a "mastermind" in framing defendant.

Defendant contended that the State's entire case rested upon him having worn the recovered gloves, and since DNA did not establish that he had, it meant that an officer engaged in unlawful conduct, including planting evidence taken from the crime scene. He further contended that his innocence was supported by the absence of semen in vaginal swabs from the victim. Defendant's expert

A-0600-17

report stated that since defendant's DNA was not found on the right glove, that meant he did not wear it, and since no DNA traces were found on the left glove, or on the inside of the plastic bag in which he allegedly transported his clothing to hiding places, or on the belt used to choke the victim, more DNA testing should be conducted. The State opposed the application on the basis that the test results were merely cumulative to the proofs presented at the two trials, would not change the jury's verdict, and ignored the crucial fact that only defendant's blood was found on the cut wires in the victim's car.

Judge Margaret M. Foti heard oral argument, denying relief on August 29, 2017. Now on appeal, defendant raises the following points:

POINT I

EVIDENTIARY HEARINGS ARE REQUIRED BASED ON APPELLANT'S PRIMA FACIE SHOWING THAT FACTS SUPPORTING HIS PETITION FOR POST-CONVICTION RELIEF WARRANT FURTHER DEVELOPMENT AND THE MERITORIOUS DEFENSES ASSERTED INVOLVE FACTS AND EXPERT OPINIONS WHICH ARE GENERALLY OUTSIDE OF THE TRIAL AND APPELLATE RECORD.

POINT II

THE PCR COURT FAILED TO COMPREHEND THE SIGNIFICANCE OF NEWLY AVAILABLE STR DNA TEST RESULTS AND ABUSED ITS DISCRETION IN FAILING TO HOLD

EVIDENTIARY HEARINGS, PRECLUDING SCIENTIFIC EVIDENCE, AND REFUSING TO ORDER ADDITIONAL DNA TESTING.

POINT III

THE PCR COURT ABUSED ITS DISCRETION IN DENYING DISCOVERY AND A PLENARY HEARING TO FURTHER DEVELOP EVIDENCE OF THIRD-PARTY GUILT.

POINT IV

THE PCR COURT ABUSED ITS DISCRETION IN FAILING TO ORDER ADDITIONAL SCIENTIFIC TESTING.

POINT V

THE TRIAL COURT WOULD NOT HAVE PRECLUDED APPELLANT'S EXPERT AND SCIENTIFIC EVIDENCE HAD THE STR DNA EVIDENCE BEEN AVAILABLE AT THE TIME.

POINT VI

PROSECUTORIAL MISCONDUCT IN THE FORM OF BRADY VIOLATIONS, FALSE TESTIMONY THAT REMAINS UNCORRECTED TO THIS DAY, AND INTENTIONAL TAMPERING AND DESTRUCTION OF EXCULPATORY PHYSICAL EVIDENCE DENIED APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL.

POINT VII

SUPPRESSION OF THE ALLEGED CONFESSION IS REQUIRED DUE TO VIOLATIONS OF THE

10

FOURTH, FIFTH, SIXTH, AND FOURTEENTH
AMENDMENTS.

POINT VIII

THE PROCEDURAL BAR DOES NOT PRECLUDE
APPELLANT'S PCR CLAIMS.

POINT IX

APPELLANT ASSERTS A FREE STANDING
ACTUAL INNOCENCE CLAIM ON PCR.

I.

We address defendant's arguments by combining the issues he raises. Rule 3:22-12(a)(1)(A) provides that a first petition for PCR must be filed no more than five years after conviction unless a defendant can demonstrate excusable neglect and the reasonable probability that, if his factual assertions were true, enforcement of the time bar would result in a fundamental injustice. The rule further provides that a defendant may file a first PCR petition within one year of the recognition of a new constitutional right or of a factual predicate for relief that could not have been discovered earlier through reasonable diligence. R. 3:22-12(a)(1)(B). The trial court should relax the time bar only in exceptional circumstances and when the error complained of "played a role in the determination of guilt." State v. Mitchell, 126 N.J. 565, 580 (1992); accord

11

State v. Nash, 212 N.J. 518, 547 (2013); State v. Afanador, 151 N.J. 41, 52 (1997).

Defendant's asserted reason for the late filing, that appellate counsel failed to advise him of his right to seek PCR and of the applicable filing deadline, lacks merit. It is well-established that ignorance of the law does not equate to excusable neglect. State v. Murray, 315 N.J. Super. 535, 539-40 (App. Div. 1998); accord State v. Cummings, 321 N.J. Super. 154, 166-67 (App. Div. 1999) (difficulty reading and writing and defendant's ignorance of law did not excuse late filing).

In addition to defendant's failure to establish excusable neglect, many of the points raised in his petition are barred because, pursuant to Rule 3:22-5, they were previously addressed in prior appellate and trial court decisions, or could have been resolved on the direct appeal. These include: (1) the allegation the prosecutor engaged in misconduct during opening and closing statements; (2) that defendant was improperly precluded from presenting evidence that the victim's boyfriend was the actual perpetrator based in part on the presence of the victim's boyfriend's "bloody" fingerprint on the utensil drawer; (3) error in the jury charge; (4) that defendant's confession was coerced and he should have been granted a rehearing after it was "revealed" that he was handcuffed while in police

custody; (5) the physical evidence should have been suppressed; (6) the jury was prejudiced and engaged in misconduct; (7) the serology books were doctored by police and the prosecutor; (8) the prosecutor presented perjured testimony regarding photos taken of the victim's car; (9) other defense witness testimony was wrongfully precluded; (10) the DNA evidence was unreliable; and (11) the judges who presided over his prosecution were biased against him.

Defendant attempts to gain consideration of these issues a second, third, or fourth time, in part by arguing that appellate counsel was ineffective for failing to raise them. In order to establish that, pursuant to the familiar standard, defendant would have to show not only the particular manner in which counsel's performance was deficient, but also the manner in which the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); State v. DiFrisco, 137 N.J. 434, 457 (1994); State v. Fritz, 105 N.J. 42, 58 (1987). A defendant must not make bald assertions, but must allege facts sufficient to demonstrate that his or her counsel's performance was substandard. State v. Porter, 216 N.J. 343, 355 (2013); Cummings, 321 N.J. Super. at 170.

Defendant has entirely failed to do more than make bald assertions and engage in broad-ranging speculation. This simply is not enough to satisfy his

A-0600-17

prima facie burden. Porter, 216 N.J. at 355; Cummings, 321 N.J. Super. at 170. Many of the claims are simply factually inaccurate.

There has never been any proof, for example, that the victim's boyfriend left a bloody fingerprint on a utensil drawer. In fact, to the contrary, the only evidence in the record regarding his fingerprint on the drawer was proffered by the initial DNA expert, who testified it was taken from an area on which no blood was found, and the print itself had no blood.

Defendant may be unhappy with the outcome of the Miranda motion. But years of litigation have still not made his confession one that should have been suppressed.

Defendant is not entitled to an evidentiary hearing as he has not established "a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, [would] ultimately succeed on the merits." R. 3:22-10(b); Porter, 216 N.J. at 355; State v. Preciose, 129 N.J. 451, 462-64 (1992). Thus, this attack upon the judge's dismissal of his 2006 PCR petition—essentially a belated appeal—lacks merit. R. 2:11-3(e)(2).

II.

With regard to the 2015 PCR petition, Judge Foti correctly concluded that defendant had not established all of the eight conditions required for additional

DNA testing under N.J.S.A. 2A:84A-32a(a). Again, by seeking to test more items, defendant is in actuality engaging in a belated appeal of the 2007 decision.

Furthermore, as Judge Foti pointed out, the jury convicted defendant despite his argument at trial that the absence of DNA on the left glove mandated acquittal. Additional DNA testing would serve no purpose. The finding, for example, that no trace of defendant's DNA was found on the inside of the right glove is consistent with his statement to police that the victim pulled it off during the struggle. The jury heard that testimony before convicting defendant.

Defendant's claims regarding police and prosecutorial misconduct are nothing more than baseless allegations. No new trial should have been granted based on purely speculative assertions.

N.J.S.A. 84:32a(d)(5) provides in part that a trial court must deny a motion for DNA testing unless

> the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted. The court in its discretion may consider any evidence whether or not it was introduced at trial.

Under subsection (5), a defendant need not prove that the DNA results will be favorable; rather, he or she need only establish a reasonable probability that if the DNA results are favorable to him or her, a new trial would be granted.

A-0600-17

State v. Peterson, 364 N.J. Super. 387, 396-97 (App. Div. 2003). A defendant is entitled to a new trial where "the State's proofs are weak, when the record supports at least reasonable doubt of guilt, and when there exists a way to establish guilt or innocence once and for all." State v. Reldan, 373 N.J. Super. 396, 402 (App. Div. 2004) (quoting State v. Thomas, 245 N.J. Super. 428, 436 (App. Div. 1991)).

Defendant claims the new DNA test results prove his innocence—a claim that does not require much discussion. R. 2:11-3(e)(2). The new DNA results were inconsequential. Their lack of significance is highlighted by the findings regarding the cut wires and black pants—which corroborated, not refuted, his confession. Thus, his motion for more DNA testing was properly denied.

III.

Defendant does not show excusable neglect or any fundamental unfairness that would impact application of the rules that bar further consideration. Appellate counsel was not ineffective because the issues defendant contends he mishandled had no merit from inception. The deficiencies defendant now alleges fail to meet either the performance or prejudice prongs of Strickland.

16

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0600-17