**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2086-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALTERICK KELLY, a/k/a
CLARENCE KELLY,
AL-TERICK KELLY,
GLEN KELLY, ARNALD
STITH, TRYEE STITH,
KHALIF STITH, ARNOLD
STITH, and CLARENCE
YOUND,

    Defendant-Appellant.

_____

Submitted February 10, 2021 – Decided March 4, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 98-08-3556.

Alterick Kelly, appellant pro se.

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Stephen A.

Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Alterick Kelly appeals from a November 6, 2019 order denying his second motion to correct an illegal sentence. We affirm.

We recounted the underlying facts in our opinion on direct appeal:

> At approximately 1:00 a.m. on April 29, 1998, Newark police officers responded to a report of shots fired in the backyard lot of 25 Aster Street. The bodies of Derrick Powell and Jhidoniane Anderson were discovered slumped over each other and riddled with multiple gun shot wounds. The bodies were surrounded by spent shell casings from three separate weapons: a .38 caliber, a .380 caliber and a 9mm. Officer Johnny Faulkner was one of the first at the scene, and he saw drops of blood on the ground leading away from the bodies. He followed a trail of blood west on to Murray Street and south on Brunswick Street, to a building at 86 Brunswick Street. Faulkner then notified the officer in charge, Lieutenant James D. O'Connor, of his observations.
>
> O'Connor testified that he and a team of officers followed the fresh blood trail found by Officer Faulkner which led to an apartment building, into the foyer and to the door at apartment 1A. Believing that an injured person was in the apartment, whether it be a murderer or an innocent victim, O'Connor knocked on the door. A woman, later identified as Delfonda Swint, opened the door, and O'Connor saw a man, later identified as defendant, standing two feet behind her with a black pistol in his hand. One of the other officers pulled Swint out of the way, and O'Connor and another officer

2

ran into the apartment. The man holding the gun fled further back into the apartment. O'Connor saw two other men in the apartment as he entered. Later identified as co-defendants Deshawn Stith and Stephen Whitley, these men were secured by other officers as O'Connor pursued the man with a gun into the kitchen. O'Connor next saw the defendant's arm coming down as if he had placed something on top of a kitchen cabinet, and he observed blood trickling from the cabinet. When the defendant was told to show his hands, he did not do so, holding the left side of his body. O'Connor then wrapped his hands around and discovered that defendant was wounded. After the apartment was secured, a .38 caliber handgun, a .380 caliber handgun, and a 9mm handgun were located on top of the kitchen cabinets. The suspects were arrested and read their rights.

. . . .

At trial co-defendants Stith and Whitley testified for the State after pleading guilty to aggravated manslaughter. Whitley testified that the killing was Kelly's idea because there was a turf war with the victims and that "either we kill them or they're going to kill us." He said that all three assailants had a gun and that defendant had the 9mm. He said that Kelly lured the victims to the back lot and they pulled out the guns at the same time and started shooting. He said that Kelly was shot accidently during the execution of the two victims. Whitley's testimony was corroborated by Stith, who said that they all agreed to kill the two victims, and they all participated in the shooting.

Defendant testified in his own defense that he was "just hanging out" drinking with the co-defendants when a patrolman told them to move off of the street. They went into the back lot where they confronted the

3

victims. Defendant said that Stith had two guns, and Whitley had another. When the two co-defendants started shooting the victims, defendant said he tried to intervene and was accidently shot. After the shooting, they all went to Swint's apartment where defendant tried to treat his wound. When the police entered a few minutes later, he said he did not have a gun in his hand but rather a black cordless phone.

[State v. Kelly (Kelly I), A-1744-00 (App. Div. July 5, 2002) (slip op. at 1-4), certif. denied, 174 N.J. 548 (2002).]

An Essex County grand jury returned an indictment charging defendant, Stith, and Whitley with first-degree murder of Powell and Anderson (counts one and two), N.J.S.A. 2C:11-3; three counts of third-degree unlawful possession of a weapon (counts three, five, and seven), N.J.S.A. 2C:39-5(b); three counts of second-degree possession of a firearm for an unlawful purpose (counts four, six, and eight), N.J.S.A. 2C:39-4(a); and fourth-degree possession of a defaced firearm (count nine), N.J.S.A. 2C:39-3d. We recounted the subsequent procedural history in our opinion on appeal from the denial of defendant's petition for post-conviction relief (PCR):

On June 13, 2000, a jury convicted defendant of the first-degree aggravated manslaughter of Derrick Powell, N.J.S.A. 2C:11-4(a), as a lesser-included offense of murder (count one); the aggravated manslaughter of Jhidoniane Anderson, also as a lesser-included offense of the original charge of murder (count two); third-degree unlawful possession of a

firearm, N.J.S.A. 2C:39-5(b) (count seven); and second-degree possession of a firearm for unlawful purpose, N.J.S.A. 2C:39-4(a) (count eight). Defendant was sentenced on July 28, 2000, to thirty years imprisonment on count one, subject to eighty-five percent parole ineligibility in accord with the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; twenty years subject to NERA on count two, consecutive to count one; five years imprisonment on count seven, concurrent to count two and consecutive to count one; and ten years with five years of parole ineligibility on count eight, concurrent to count two and consecutive to count one.

. . . .

[Co-defendants] Stith and Whitley entered guilty pleas to two aggravated manslaughter charges. In exchange for their guilty pleas and their agreement to testify truthfully in defendant's trial, Whitley received an aggregate sentence of twenty-four years subject to NERA, and Stith received an aggregate twenty-five years subject to NERA.

[State v. Kelly (Kelly II), No. A-4331-07 (App. Div. Dec. 10, 2009) (slip op. at 1-4) (footnote omitted).]

We affirmed defendant's conviction and sentence on direct appeal except for count eight, which we remanded to the trial court for entry of amended judgment of conviction reflecting a merger of that charge. Kelly I.

5

On August 24, 2004, defendant filed a pro se PCR petition. Counsel was assigned to represent him. Defendant raised a Blakely[1]/Natale[2] sentencing argument that he again raises in this appeal. On January 11, 2008, the PCR court denied his claim, finding the case was not in the pipeline at the time of the Supreme Court's decision in Natale, the sentence appears "to be totally appropriate in the circumstances," the Appellate Division had already reviewed the sentence and found it was not excessive, and, therefore, sentencing should not be revisited. In his appeal from the denial of PCR, defendant did not argue that his sentence violated Blakely or Natale. See Kelly II, slip op. at 1.

In December 2010, defendant filed a petition for habeas corpus in the United States District Court for the District of New Jersey. Kelly v. Bartkowski (Kelly III), No. 11-363 (DMC), 2012 U.S. Dist. LEXIS 100627, at *6 (D.N.J. July 19, 2012). Ground eleven of his petition stated: "The sentence imposed on [defendant] by the trial judge was contrary to the clearly established federal precedent set forth in Blakely v. Washington." Id. at *10. The District Court found that defendant raised this claim before the PCR court, which denied his request. Id. at *45. The District Court noted the "Supreme Court of New Jersey

---

[1] Blakely v. Washington, 542 U.S. 296 (2004).

[2] State v. Natale, 184 N.J. 458 (2005).

held that the rule it announced in <u>Natale</u> was applicable retroactively only to cases in the direct appeal pipeline as of the date of that decision, August 2, 2005." <u>Id.</u> at *49. Defendant "had already concluded his direct appeals by the date of the <u>Natale</u> decision; thus, the <u>Natale</u> decision did not entitle him to relief, as a matter of state law." <u>Ibid.</u> Accordingly, it held that "whether or not the sentence was imposed in violation of the rules announced in the <u>Apprendi</u>/<u>Natale</u> line of cases, [defendant] is not entitled to relief in this federal collateral proceeding." <u>Id.</u> at *49-50.

On December 11, 2012, defendant filed a motion to correct an illegal sentence. The trial court denied the motion on April 14, 2014. We affirmed. The Supreme Court denied certification. <u>State v. Kelly</u>, 223 N.J. 280 (2015).

Defendant filed a second motion to correct an illegal sentence on October 21, 2019. He claimed that his thirty-year NERA term on count one was above the presumptive statutory term and is not based solely on any prior conviction, in violation of his Sixth Amendment right to jury trial. The trial court denied the motion on November 6, 2019. In its accompanying written decision, the court found:

> The holding in [<u>Natale</u>] is inapplicable to your case. The Supreme Court of New Jersey held that [<u>Natale</u>] only applied to defendants with cases on direct appeal as of the decision date of [<u>Natale</u>] and to those

defendants who raised claims arising out of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) at trial or on direct appeal. <u>Natale</u> 184 N.J. at 495. Your appeal was decided in 2002, three years prior to <u>Natale</u>. Additionally, the [c]ourt has no evidence or reason to believe that either you or your attorney raised a <u>Blakely</u> claim at trial or on direct appeal. Furthermore, the [c]ourt is completely unpersuaded by the logic of your argument advanced in footnote [one] of your brief[.] <u>Natale</u> is simply inapplicable to your case.

This appeal followed. Defendant argues:

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO CORRECT AN ILLEGAL SENTENCE UNDER <u>BLAKELY V. WASHINGTON</u>

"[A]n illegal sentence is one that 'exceeds the maximum penalty . . . for a particular offense' or a sentence 'not imposed in accordance with law.'" <u>State v. Acevedo</u>, 205 N.J. 40, 45 (2011) (quoting <u>State v. Murray</u>, 162 N.J. 240, 247 (2000)). "That includes a sentence 'imposed without regard to some constitutional safeguard.'" <u>State v. Zuber</u>, 227 N.J. 422, 437 (2017) (quoting <u>State v. Tavares</u>, 286 N.J. Super. 610, 618 (App. Div. 1996)). "A defendant may challenge an illegal sentence at any time." <u>Ibid.</u> (citing <u>R.</u> 3:21-10(b)(5); <u>Acevedo</u>, 205 N.J. at 47 n.4).

The trial court correctly held that the new constitutional rule adopted in <u>Natale</u> applied only to defendants with cases on direct appeal as of the decision

date in <u>Natale</u> and to those defendants who raised <u>Blakely</u> claims at trial or on direct appeal. Defendant does not fall within either of those categories. <u>Natale</u> was decided on August 2, 2005. His direct appeal was decided by this court on July 5, 2002. Defendant did not raise a <u>Blakely</u> claim at trial or on direct appeal. Accordingly, <u>Natale</u> does not apply to defendant's sentence. The motion was properly denied on that basis.

Defendant's sentence on counts one and two, which was affirmed on direct appeal, is not otherwise illegal. Notwithstanding the provisions of N.J.S.A. 2C:43-6(a)(1), the ordinary base term for first-degree aggravated manslaughter is between ten and thirty years. N.J.S.A. 2C:11-4(c). Here, defendant was sentenced to a thirty-year NERA term on count one and a consecutive twenty-five-year NERA term on count two. The prison terms fall within the statutory range and do not exceed the maximum penalty. Claims that a sentence "within the range permitted by a verdict" is excessive must be raised on direct appeal, <u>State v. Hess</u>, 207 N.J. 123, 145 (2011), and "are not cognizable . . . under the present <u>Rule</u> 3:21-10(b)(5)," <u>Acevedo</u>, 205 N.J. at 47.

In addition, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to [Rule 3:22] . . . or in any appeal

taken from such proceedings." R. 3:22-5. Defendant raised a Natale/Blakely claim in his prior PCR proceeding, which was denied on the merits by the PCR court. He is barred from relitigating that claim.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2086-19