**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4363-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RALPH KIETT, JR.,

     Defendant-Appellant.

_____

Argued November 10, 2021 – Decided July 7, 2022

Before Judges Fuentes, Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment Nos. 85-04-0588 and 85-04-0589.

Ashley T. Brooks, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Joseph J. Russo, Deputy Public Defender, and Ashley T. Brooks, of counsel and on the briefs).

John J. Santoliquido, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Cary Shill, Acting Atlantic County Prosecutor, attorney; John J. Lafferty, IV, Special

Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs; Debra B. Albuquerque, Special Deputy Attorney General/Acting Assistant Prosecutor, on the briefs).

PER CURIAM

Defendant Ralph Kiett appeals from the April 11, 2019 Law Division order denying his motion to correct an illegal sentence. We affirm.

We recount the pertinent facts and extensive procedural history of the case. In 1983, defendant was detained and charged as a seventeen-year-old juvenile with first-degree murder stemming from the fatal stabbing of nineteen-year-old Elizabeth Ann Coutee. Our Supreme Court poignantly described the crime and characterized the evidence supporting guilt as follows:

> Nineteen-year-old Elizabeth Ann Coutee disappeared on the night of February 25, 1982. Six days later, her body, nude except for her socks, was found in a marshy area near Westend Avenue in Atlantic City. She had been stabbed twenty-eight times. The evidence that defendant committed the crime was overwhelming.
>
> [State v. Kiett, 121 N.J. 483, 485 (1990).]

Jurisdiction was waived to the Law Division where defendant was prosecuted as an adult and charged in a seven-count indictment with three counts of murder, N.J.S.A. 2C:11-3(a) (1), (2), and (3); two weapons offenses, N.J.S.A. 2C:39-4(d) and 2C:39-5(d); and two counts of aggravated sexual assault,

N.J.S.A. 2C:14-2(a) (4) and (6).  The murder was designated as a capital offense under the death penalty that was then in effect.  A second three-count indictment charging two counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(5), and one count of second-degree escape, N.J.S.A. 2C:29-5(a), was also returned against defendant arising from his attempted escape while in custody on the murder-related charges.

In 1985, defendant entered a negotiated guilty plea to one count of murder and escape.  Under the terms of the plea agreement, the State agreed to essentially refrain from seeking the death penalty and move to dismiss the remaining charges in both indictments at sentencing.  In accordance with the plea agreement, the trial court sentenced defendant to life imprisonment, with thirty years of parole ineligibility, on the murder conviction, and a consecutive ten-year term, with five years of parole ineligibility, on the escape conviction.  At sentencing, as mitigating factors, the court expressly considered defendant's age, intellectual disability, early childhood emotional and physical trauma, and substance abuse history.

On appeal, our Supreme Court reversed our decision affirming defendant's convictions and sentence, see State v. Kiett, No. A-2113-85 (App. Div. Oct. 5, 1988), and remanded to allow defendant to "withdraw his guilty plea," Kiett,

121 N.J. at 499. The Court determined that "[a]voiding the death penalty was a material factor in Kiett's decision to plead guilty." Id. at 491. However, because "Kiett was a juvenile at the time the crime was committed," the death penalty never applied to him, and he therefore "entered his guilty plea relying on misinformation about his eligibility for execution." Id. at 489-91.

On the remand, defendant negotiated a new plea agreement and, in 1991, entered a retraxit plea of guilty to the same charges. In accordance with the new plea agreement, defendant was sentenced to life in prison, with a thirty-year parole disqualifier on the murder conviction and a concurrent, rather than a consecutive, ten-year term, with a five-year parole disqualifier, on the escape conviction. At sentencing, the court considered the fact that defendant had no prior criminal history as a mitigating factor. We affirmed the sentence on appeal and the Supreme Court denied certification. State v. Kiett, No. A-5087-90 (App. Div. June 1, 1992), certif. denied, 130 N.J. 19 (1992).

Subsequently, defendant filed two petitions for post-conviction relief (PCR) pursuant to Rule 3:22-1, one in 2008 and one in 2015, and one motion for a new trial pursuant to Rule 3:20-2 in 2014. The first PCR petition, termed a motion to correct an illegal sentence and alleging excessive sentence and ineffective assistance of counsel, was denied by the PCR court on procedural

A-4363-18

and substantive grounds, and we affirmed. State v. Kiett, No. A-5166-09 (App. Div. June 17, 2011). The motion for a new trial, alleging that the case was improperly waived to the Law Division, was also denied by the trial court. We affirmed, and the Supreme Court denied certification. State v. Kiett, No. A-2457-14 (App. Div. July 20, 2016), certif. denied, 228 N.J. 432 (2016). The second PCR petition, also termed a motion to correct an illegal sentence and alleging ineffective assistance of PCR counsel, was denied by the PCR court on procedural grounds, and we affirmed on appeal. State v. Kiett, No. A-5316-15 (App. Div. March 29, 2017).[1]

In 2019, defendant again moved to correct an illegal sentence, arguing his sentence of life imprisonment with thirty years of parole ineligibility contravened the rulings in Miller v. Alabama, 567 U.S. 460 (2012) and State v. Zuber, 227 N.J. 422 (2017). On April 11, 2019, the judge entered an order denying the motion. In an accompanying written opinion, the judge ruled the motion was time-barred under Rule 3:22-12. Further, because the argument had been previously litigated in defendant's prior PCR petition, the judge found the

_____

[1] Defendant also filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, which was rejected by the federal district court on May 24, 2017, because the petition was filed twenty years too late, and defendant was not entitled to statutory tolling. Kiett v. Bonds, No. 17-2543, 2017 U.S. Dist. LEXIS 80887, at *4 (D.N.J. May 24, 2017).

motion was procedurally barred under Rule 3:22-5. Nonetheless, addressing the merits, the judge relied on State v. Bass, 457 N.J. Super. 1, 13-14 (App. Div. 2018), and rejected defendant's contention, determining defendant's "sentence [was] not the functional equivalent of a life sentence without parole" to warrant relief under Zuber.[2]

On June 11, 2019, defendant filed a notice of appeal (NOA) from the April 11, 2019 order. Subsequently, on February 12, 2020, defendant filed a motion to expand the record to include parole statistics obtained from the New Jersey State Parole Board in response to a January 14, 2020 Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, request. On March 3, 2020, we denied the motion.

In this ensuing appeal, defendant raises the following points for our consideration:

> POINT I
>
> THE LAW DIVISION ERRED IN FINDING THAT A MOTION TO CORRECT AN ILLEGAL SENTENCE BASED UPON MILLER V. ALABAMA, 567 U.S. 460 (2012), AND STATE V. ZUBER, 227 N.J. 422 (2017) WAS "TIME-BARRED."

---

[2] Because defendant's moving papers were not included in the record, we rely on the judge's decision to discern defendant's argument.

POINT II

THE LAW DIVISION ERRED IN FINDING THAT A MOTION TO CORRECT AN ILLEGAL SENTENCE BASED UPON MILLER V. ALABAMA, 567 U.S. 460 (2012), AND STATE V. ZUBER, 227 N.J. 422 (2017) WAS PRECLUDED UNDER [RULE] 3:22-5.

POINT III

THIS MATTER MUST BE REMANDED FOR RECONSIDERATION AND/OR EXPANSION OF THE RECORD GIVEN THAT THE FACTUAL PREDICATE RELIED ON BY THE LAW DIVISION, NAMELY THAT [DEFENDANT] FACED ONLY [THIRTY] YEARS OF PAROLE INELIGIBILITY, WAS IN ERROR.

POINT IV

THE LAW DIVISION ERRED IN ITS APPLICATION OF STATE V. BASS BY UTILIZING LIFE-EXPECTANCY GIVEN THE UNEQUIVOCAL LANGUAGE IN STATE V. ZUBER INSTRUCTING COURTS NOT TO EMPLOY LIFE-EXPECTANCY TABLES WHEN ASSESSING THE OVERALL LENGTH OF A SENTENCE.

POINT V

THE LAW DIVISION ERRED IN DENYING [DEFENDANT] RELIEF UPON THE MERITS OF HIS APPLICATION TO CORRECT AN ILLEGAL SENTENCE BASED UPON MILLER V. ALABAMA, 567 U.S. 460 (2012), AND STATE V. ZUBER, 227 N.J. 422 (2017).

7

POINT VI

THE HEARING AND SUBSEQUENT DECISION
WERE SO INFECTED WITH ERROR THAT EVEN
IF EACH INDIVIDUAL ERROR DOES NOT
REQUIRE REVERSAL, THE AGGREGATE OF THE
ERRORS DENIED [DEFENDANT] A FAIR
HEARING. (NOT RAISED BELOW).

"A defendant may challenge an illegal sentence at any time." Zuber, 227 N.J. at 437 (citing R. 3:21-10(b)(5); State v. Acevedo, 205 N.J. 40, 47 n.4 (2011)). "[A]n illegal sentence is one that 'exceeds the maximum penalty . . . for a particular offense' or a sentence 'not imposed in accordance with law.'" Acevedo, 205 N.J. at 45 (quoting State v. Murray, 162 N.J. 240, 247 (2000)). "That includes a sentence 'imposed without regard to some constitutional safeguard.'" Zuber, 227 N.J. at 437 (quoting State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996)). Thus, a statutorily permissible sentence, as here, "may still violate the constitutional prohibition against cruel and unusual punishment," rendering the sentence illegal. State v. Tormasi, 466 N.J. Super. 51, 62 (App. Div. 2021).

In Points I and II of his brief, defendant argues the judge erred in finding that his motion to correct an illegal sentence based on Miller and Zuber was procedurally barred because it was filed twenty-eight years after his 1991 guilty plea and had been previously litigated in his 2010 PCR petition. The State

8

concedes that "[t]he language in Zuber is clear that motions related to the legality of a sentence can be brought at any time," and "Zuber provides a new basis to argue that his sentence was illegal" that did not exist in 2010. Nevertheless, according to the State, the judge's "ruling . . . on the substance of [defendant's] motion was correct."  We agree.

"In Miller, the Supreme Court declared that mandatory life imprisonment without parole imposed upon a juvenile sentenced as an adult violates the Eighth Amendment."  Tormasi, 466 N.J. Super. at 62 (citing Miller, 567 U.S. at 479). "The Miller Court did not preclude the possibility of a life sentence for a juvenile convicted of homicide but reaffirmed and expanded its determination in Graham [v. Florida, 560 U.S. 48 (2010)] that a life sentence may not be mandatory and should be 'uncommon' given a juvenile's 'diminished culpability and heightened capacity for change.'"  Tormasi, 466 N.J. Super. at 63 (quoting Miller, 567 U.S. at 479).  In so doing, the Miller Court identified factors unique to juvenile offenders "('the Miller factors') to be considered by sentencing judges."  State v. Thomas, 470 N.J. Super. 167, 181 (App. Div. 2022).

> In Zuber, the Court extended the holding of Miller to juveniles who receive a "lengthy, aggregate sentence that amounts to life without parole."  The Court held that when a juvenile is tried as an adult and is subject to a lengthy sentence that is "the practical equivalent of life without parole," the sentencing court

must consider the <u>Miller</u> factors in addition to the statutory aggravating and mitigating sentencing factors. The Court did not preclude the possibility of a de facto life term but instructed that few juveniles should receive one because "it is only the 'rare juvenile offender whose crime reflects irreparable corruption.'"

The Court did not define a de facto life term by any specific length and rejected the use of life-expectancy tables in deciding whether a lengthy term is effectively a life term. The Court instructed sentencing courts to consider "the real-time consequences of the aggregate sentence" and held that the aggregate terms at issue in that consolidated case—110 years with a 55-year parole-bar and 75 years with a 68-year and 3-month parole-bar—were the functional equivalent of life terms.

[<u>Tormasi</u>, 466 N.J. Super. at 64 (citations omitted) (quoting <u>Zuber</u>, 227 N.J. at 447, 450-51).[3]]

In <u>Bass</u>, we held that an aggregate term of life imprisonment with thirty-five years of parole ineligibility for felony murder and burglary was not the functional equivalent of a life sentence, noting that the defendant was "eligible for parole" at age forty-nine. 457 N.J. Super. at 4, 12-13. We rejected the defendant's "argument that his sentence was illegal . . . and thus, warranted

---

[3] "Defendant Ricky Zuber was sentenced to an aggregate 150-year term with a 75-year period of parole ineligibility, which made him eligible for parole at age 92." <u>Tormasi</u>, 466 N.J. Super. at 59 n.4 (citing <u>Zuber</u>, 227 N.J. at 428). "Defendant James Comer was sentenced to an aggregate 75-year term with a 68.25-year period of parole ineligibility, which made him eligible for parole at age 85." <u>Ibid.</u> (citing <u>Zuber</u>, 227 N.J. at 430, 433, 448).

review pursuant to Rule 3:21-10(b)(5)" and disagreed with his contention "that his rehabilitation while he was incarcerated ha[d] any bearing on the legality of his sentence." Bass, 457 N.J. Super. at 12-13.

We reasoned that any rehabilitative actions the defendant had undertaken while incarcerated were matters for the parole board to consider and did not render the sentence unconstitutional under Zuber. Bass, 457 N.J. Super. at 14. We explained:

> [D]efendant's sentence is not illegal because he now claims to be rehabilitated as a result of his incarceration. We do not minimize defendant's efforts to rehabilitate himself . . . . However, consideration of these accomplishments is exclusively the province of the parole board and not a means of collateral attack on defendant's sentence—which has been affirmed on direct appeal.
>
> [Ibid.]

Similarly, in Tormasi, where defendant was sentenced to life imprisonment with a thirty-year period of parole ineligibility for murder, we held that the "[d]efendant's sentence d[id] not amount to the functional equivalent of life without parole" to warrant resentencing under Zuber. Tormasi, 466 N.J. Super. at 66. We explained that the sentence was "far from a de facto life sentence without parole when imposed on a juvenile offender, who [would] be eligible for release by age forty-seven." Ibid.

11

Here, we agree with the judge that defendant's sentence of life imprisonment with a thirty-year parole bar is not the functional equivalent of a life sentence without parole to warrant resentencing under Zuber. Defendant argues the judge erred in relying on Bass because the Bass court "erroneously relied upon data from life expectancy charts" which "is directly contrary to the law clearly enunciated in Zuber." However, we find no merit in defendant's argument and no error in the judge's reliance on Bass to deny defendant's motion.

Defendant further asserts the court inherently reasoned "that [defendant] is likely to be paroled at the conclusion of his [thirty]-year period of parole ineligibility" and "[t]hus . . . denied relief upon its perception that [defendant] would have a reasonable likelihood of being paroled when eligible." However, according to defendant, "given the statistics provided by the . . . Parole Board, the greater likelihood is that, regardless of any proof of rehabilitation," defendant "will not be paroled upon his first date, rendering his de facto period of parole ineligibility more likely to be at least [forty] years," "if not substantially longer in light of the systematic and routine denials of parole for inmates sentenced to life." Thus, defendant urges that we either "remand for consideration of de facto periods of parole ineligibility" to "evaluat[e

defendant's] sentence under <u>Zuber</u>" or "expand the record on appeal" to include the parole statistics.[4]

We decline either invitation. First, nowhere in the judge's decision is it either stated or implied that defendant is likely to be paroled when eligible. Further, as we noted in <u>Tormasi</u>, "the fact that other inmates convicted of murder have been initially denied parole is presumably based on an individualized consideration of the regulatory factors as applied to those inmates. Accordingly, data showing the frequency of parole denial is not probative." <u>Id.</u> at 69.

Additionally, "[b]oth federal and State precedent on cruel and unusual punishment support a finding that the possibility of parole provides a meaningful opportunity for release." <u>Id.</u> at 67. Because "<u>Zuber</u> implicitly approve[d] of the parole process," the possibility, rather than a guarantee, of parole "provides a meaningful opportunity at release for purposes of the Eighth Amendment." <u>Tormasi</u>, 466 N.J. Super. at 67-68; <u>see also</u> <u>Graham</u>, 560 U.S. at 75 (stating "[a] State is not required to guarantee eventual freedom to a juvenile offender" but must "give defendants . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation").

_____

[4] The parole statistics defendant relies on were presented for the first time on appeal and were the subject of his motion to supplement the record, which we denied.

A-4363-18

"Moreover, '[t]he granting of parole is within the discretion of the [Parole] Board, and we must give great deference to the expertise of the Board in its parole decisions and not upset them unless it clearly and convincingly appears that the Board has abused its discretion.'" Tormasi, 466 N.J. Super. at 68 (quoting Trantino v. N.J. State Parole Bd., 296 N.J. Super. 437, 470 (1997)). "If defendant is denied parole, he has the right to appeal that decision to this court." Ibid.

> "[T]hat would be the appropriate time" for this court to consider whether the Parole Board adequately considered the rehabilitation and maturity defendant achieved while in prison, and if "judicially ordered parole of a convicted murderer might be in order. However, that possibility must await completion of the parole process in its entirety."
>
> [Ibid. (quoting Acoli v. N.J. State Parole Bd., 224 N.J. 213, 232 (2016)).]

"If [a defendant] serves a substantial period in prison due to a parole denial or denials, he may even have a basis to file a motion to correct an illegal sentence based on 'factors that could not be fully assessed when he was originally sentenced.'" Id. at 71 (quoting Zuber, 227 N.J. at 452). Those factors include "whether he may be, or has been, rehabilitated." Zuber, 227 N.J. at 452.

Since filing his NOA from the April 11, 2019 order, defendant was again denied parole on June 22, 2021. His current parole eligibility date is September

14

16, 2023. By leave granted, defendant filed a supplemental brief raising the following additional point for our consideration:

> [DEFENDANT] IS ENTITLED TO A ZUBER RESENTENCING BECAUSE HIS SENTENCE IS THE PRACTICAL EQUIVALENT TO A LIFE TERM AND HE HAS NOT BEEN AFFORDED A MEANINGFUL OPPORTUNITY FOR RELEASE. GIVEN THAT [DEFENDANT] HAS AGAIN BEEN DENIED PAROLE, RESULTING IN A FORTY-YEAR SENTENCE AT MINIMUM, HIS MOTION TO CORRECT AN ILLEGAL SENTENCE MUST BE RECONSIDERED AND GRANTED.

Defendant has not indicated whether he appealed his parole denial. Nonetheless, the development of defendant's latest parole denial does not alter our decision. On this record, defendant has not established that his sentence is the functional equivalent of a life sentence without parole or that the prospect of release at the age of fifty-eight,[5] after serving forty years, is tantamount to a life sentence. "Despite the lengthy sentence defendant has served, there are no similarities between his sentence and the sentences reviewed in Zuber." Bass, 457 N.J. Super. at 14.

That said, we do not foreclose the possibility that defendant may be able to return to court to show that he has sufficiently reformed himself to a degree

---

[5] Defendant was born in July 1965.

A-4363-18

that his sentence is no longer constitutional under the Eighth Amendment. See State v. Comer, 249 N.J. 359, 370 (2022) (creating a procedure for juvenile offenders sentenced to the murder statute's mandatory thirty-year parole bar to petition the court for a hearing after serving at least twenty years in prison for the sentencing court to assess the Miller factors, including "whether the juvenile offender still fails to appreciate risks and consequences, and whether he has matured or been rehabilitated," as well as "the juvenile offender's behavior in prison since the time of the offense"); Thomas, 470 N.J. Super. at 193-94, 197, 199 (ordering "an adversarial, evidentiary hearing under Comer" for a defendant who "perpetrated a horrific double murder when he was seventeen years old," "was sentenced to life in prison without a specified period of parole ineligibility," served more than forty years in prison due to seven parole denials, yet "ha[d] been a model prisoner" with "a blemish-free disciplinary record" and received "numerous positive psychological evaluations").

To the extent we have not specifically addressed any of defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4363-18