# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2586-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GONZALO MARRERO,

    Defendant-Appellant.

_____

Submitted January 7, 2026 – Decided April 14, 2026

Before Judges Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 85-07-0763.

Gonzalo Marrero, self-represented appellant.

Wayne Mello, Acting Hudson County Prosecutor, attorney for respondent (Josemiguel DeJesus Rodriguez, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gonzalo Marrero appeals a March 19, 2025 order denying his motion for reconsideration of his sentence. We affirm, substantially for the reasons in Judge Angelo Servidio's cogent written decision.

I.

In 1986, following jury trial, defendant was convicted of two counts of murder, N.J.S.A. 2C:11-3(a); multiple counts of felony murder, N.J.S.A. 2C:11-3(a)(3); conspiracy to commit robbery, N.J.S.A. 2C:15-1 and 2C:5-2; robbery, N.J.S.A. 2C:15-1; burglary, N.J.S.A. 2C:18-2; and aggravated sexual assault, N.J.S.A. 2C:14-2(a). The charges stemmed from the 1982 murder of a restauranteur, and the murder and aggravated sexual assault of his girlfriend. Defendant was tried jointly with co-defendant, Silvio Rosendo Mujica.

At defendant's sentencing, the trial court imposed two consecutive life terms with twenty-five years of parole ineligibility for each of the murder counts, and a twenty-year consecutive term for aggravated sexual assault with ten years of parole ineligibility, amounting to a minimum aggregate parole ineligibility period of sixty-years. Convictions and sentences for the remaining charges were merged or imposed concurrently.

In an opinion affirming defendant's convictions on direct appeal, we summarized the underlying facts.

2

On July 5, 1982, Sarin Rosario, the owner of El Catalino's Steakhouse in Union City, New Jersey, and his girlfriend [M.M.][1] were found dead in the bedroom of his apartment which was located above the steakhouse. Both victims were in clothing worn the day before. Rosario was lying in bed on his side, blindfolded, with a gunshot wound to his head. His hands were tied and a piece of paper with numbers written on it was in his hand. The numbers appeared to be the combination to an opened safe in his room. The contents had been removed.

[M.M.] was found lying beside Rosario. She too had been shot in the head. Her stockings were pulled down; . . . her dress pulled up around her neck.

Signs throughout the apartment, including the hallway and one of the easterly rooms, gave indication of a struggle. A flower pot had been overturned, there were bloodstains on the rug and walls, and the telephone wire was cut. The lock on the kitchen window security bars had also been cut to allow entry or exit.

Autopsies revealed that each victim died of a single bullet wound to the head. In addition, Rosario had a bruise and abrasions on his right hand, and [M.M.] had abrasions on her wrists where her hands were tied. Tests on a vaginal smear taken during [M.M.]'s autopsy confirmed the presence of spermatozoa.

In August 1984, more than two years later, one Jorge Rodriguez came forward with information

---

[1] We use initials to protect the privacy of the sexual assault victim. R. 1:38-3.

A-2586-24

implicating [defendant] and his codefendant Silvio Mujica.

According to Rodriguez, he was present in the apartment shared by [defendant] and Mujica when [defendant], Andres Penapavon[,] and a third individual known as "El-Negrito" made plans to rob an unnamed bar. Rodriguez saw them make three masks out of pantyhose and get some gloves. Rodriguez said that Mujica sat with him on a bed some 10-12 feet from the other three and that he (Mujica) did not participate in the planning. Later, [defendant], Penapavon[,] and El-Negrito left and when they returned several hours later, Rodriguez rode home in a taxicab with Penapavon.

At the trial, a man named Jose Betancourt testified that [defendant] told him that he and Mujica were planning to rob Rosario. They planned to force Rosario's bedroom window open and wait for him to put money in his safe, which he usually did between 2:00 and 3:00 a.m. each Sunday morning. [Defendant] also told Betancourt that he was dying to make love with the blond[e] girl ([M.M.]). They planned to use masks, but if they were recognized, they would kill Rosario. Betancourt said that he and [defendant] had several more conversations during which [defendant] tried to convince him to participate in the robbery.

[State v. Marrero, No. A-4375-85 (App. Div. Aug. 9, 1988) (slip op. at 2-4) (footnote omitted).]

In April 1991, defendant petitioned for post-conviction relief (PCR). In July 1991, the trial court denied the petition and we affirmed. State v. Marrero,

4

No. A-1004-91 (App. Div. May 4, 1994). The Supreme Court denied defendant's petition for certification. State v. Marrero, 138 N.J. 263 (1994).

In May 1997, defendant filed a petition for a writ of habeas corpus with the District Court of New Jersey. In October 2000, the District Court dismissed the petition. The Third Circuit Court of Appeals vacated the order in March 2004 and remanded the matter to the District Court for further proceedings. Marrero v. Morton, No. 03-1273, 2004 U.S. App. LEXIS 6757 (3d Cir. Mar. 30, 2004).

In December 2024, self-represented defendant filed a motion to reconsider the overall fairness of sentence "consistent with State v. Torres, 246 N.J. 246 (2021) and State v. Yarbough, 100 N.J. 627 (1985), [or,] in the alternative, to [c]orrect or [v]acate an [o]therwise [i]llegal [s]entence" in the Superior Court.

Judge Servidio construed defendant's motion to consist of two arguments: (1) the consecutive sentences imposed violated the New Jersey Supreme Court's holdings in Torres and Yarbough; and (2) he should be released due to a diagnosis of Parkinson's disease.

Regarding the first argument, Judge Servidio rejected defendant's claim that consecutive life sentences for the two murder counts, along with a consecutive sentence for aggravated sexual assault, transgressed the Court's

rulings in <u>Torres</u> and <u>Yarbough</u>.  The judge noted "[t]hese precedents outline guidelines courts should consider when determining whether to impose consecutive or concurrent sentences and require courts to provide a statement explaining the overall fairness of sentences imposed."  <u>Torres</u>, 246 N.J. at 266-68.

Relying on <u>State v. Acevedo</u>, the judge rejected defendant's contention that his motion was cognizable under <u>Rule</u> 3:21-10(b)(5).  205 N.J. 40, 47 (2011) ("contentions regarding consecutive sentences or the absence of reasons for imposition of . . . consecutive sentences do not relate to the issue of sentence 'legality' and are not cognizable on PCR, or under the present <u>Rule</u> 3:21-10(b)(5)").

The judge also determined defendant's medical condition did not qualify him for release under <u>State v. Priester</u>, 99 N.J. 123 (1985); <u>see also</u> <u>R.</u> 3:21-10(b)(2) ("[a] motion may be filed and an order may be entered at any time . . . amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant").  Pursuant to the criteria in <u>Priester</u>, the judge found defendant presented no evidence indicating he required treatment unavailable in prison or faced "devastating" health consequences.  The judge

also found the severity of defendant's crimes, his criminal history, and public safety weighed against release.

Defendant raises a single argument on appeal:

> THE MOTION COURT DECISION MUST BE REVERSED AND THE MATTER MUST BE REMANDED FOR A NEW HEARING BECAUSE THE COURT ERRED IN ITS ASSESSMENT OF THE "OVERALL FAIRNESS" REQUIREMENTS OF STATE v. TORRES.

## II.

We review motions to correct an illegal sentence de novo. State v. Jones, 478 N.J. Super. 532, 541 (App. Div. 2024); see also State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016). A court may correct an illegal sentence "at any time before it is completed." State v. Murray, 162 N.J. 240, 247 (2000) (citing State v. Sheppard, 125 N.J. Super. 332, 336 (App. Div. 1973)); see also R. 3:21-10(b). If a defendant's sentence is illegal, a reviewing court must remand for resentencing. See State v. Romero, 191 N.J. 59, 80-81 (2007).

Defendant contends the motion court's ruling should be reversed because the sentencing court failed to adequately explain its application of aggravating and mitigating factors or articulate the overall fairness of his sentence, as required under Torres. We concur with Judge Servidio's conclusion, relying on

7

Acevedo, that challenges to the legality of a sentence on this basis are not cognizable under the Rules. In State v. Flores, we were

> convinced that questions concerning the adequacy of the sentencing court's findings and the sufficiency of the weighing process employed should be addressed only by way of direct appeal.
>
> . . . .
>
> What has been said thus far applies with equal force to [the] defendant's argument that the consecutive sentences imposed ran afoul of the Yarbough guidelines. In our view, this is not an issue cognizable in [PCR] proceedings because it does not relate to the legality of the sentences imposed. We merely observe that such claims have historically been characterized as relating to the "excessiveness" of the sentences, rather than their legality.
>
> [228 N.J. Super. 586, 595-96 (App. Div. 1988).]

Notwithstanding defendant is precluded from relief, for the sake of completeness, we briefly consider the merits of his argument.

Defendant did not obtain the transcript from the sentencing proceeding with his appeal. However, defendant attached the judgment of conviction (JOC). Appended to the JOC are "[t]he reasons for the sentence imposed" by the sentencing judge, supplementing "all other reasons stated orally on the record for imposing the sentences herein." The list consists of nine considerations which are extensive.

8

Among the factors found, the judge expressed his "hope[] that defendant's confinement will not only act as a rather significant deterrent to him but also to others in society of similar criminal propensities." This aligns with aggravating factor nine. N.J.S.A. 2C:44-1(a)(9).

Also, the sentencing judge found:

> The actions of defendant herein, as testified to by witnesses in the case and supported by the evidence adduced before the jury conclusively establish in this [c]ourt's mind that same were committed in an especially heinous, cruel and depraved manner – not only the killing but the rape of [M.M.].

> The victims were tied – they were helpless – they were killed in execution style – the female raped in disgusting fashion.

Here, the court expressly cited aggravating factor one. N.J.S.A. 2C:44-1(a)(1). The judge also wrote, "in this case, the savagery of the various crimes committed exceeds what one would ordinarily expect for crimes of this degree."

Further, the judge wrote:

> All of the above aggravating factors clearly convince this [c]ourt that same substantially outweigh any mitigating factors (I find no mitigating factors herein justifying defendant's criminal actions) and have persuaded this [c]ourt to impose the sentences for the various convictions as well as the parole ineligibility periods and the consecutive as well as the concurrent portions of the sentencing procedure. N.J.S.A. 2C:43-6(b), (c).

Having reviewed the record, we are satisfied the sentencing judge sufficiently weighed the aggravating and mitigating factors. The sentencing court thoroughly explained the overall fairness of the sentence imposed even though the holding in Torres was not retroactive because it did not create a new rule of law. See Torres, 246 N.J. at 268.

Defendant's application for release under Rule 3:21-10(b)(2) rests primarily on his certification that he was "diagnosed [with Parkinson's disease] by the prison medical department."

In denying defendant's application, Judge Servidio applied the analytical framework set forth in Priester:

> [A]n essential predicate to the review of a custodial sentence pursuant to Rule 3:21-10(b)(2) is that a change of circumstances must have occurred. The change of circumstances most likely to have occurred between the sentencing and the hearing is the severe deterioration of the prisoner's health. However, the change may also represent a court's securing information about the defendant's health previously unknown to the sentencing court. See, e.g., [State v.] Tumminello, 70 N.J. [187,] 193 [(1976)] (where the sentencing judge "had before him no medical evidence whatsoever.").
>
> In addition to the requirement of a change of circumstances, among other factors we deem relevant to the determination of a Rule 3:21-10(b)(2) motion are the nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, the risk

to the public if the defendant is released, and the defendant's role in bringing about his current state of health.

[99 N.J. at 136-37.]

Concerning this diagnosis, Judge Servidio found,

In th[e] record, the doctor notes that . . . [d]efendant appears to have Advanced Parkinson disease and prescribes certain medication. The doctor "recommend[s] . . . considering referring [defendant] to a tertiary university hospital with a movement disorder clinic to be evaluated for deep brain stimulation" if his condition worsens . . . . However, nowhere in the record does the doctor indicate that reduction in . . . [d]efendant's sentence is required in order for him to receive treatment or to avoid "devastating" health effects[, as defendant represents].

Further, the judge found,

that the crimes for which . . . [d]efendant [was] convicted, his criminal history, and the risk to the public if . . . [d]efendant were released, are severe. . . . This [c]ourt finds that . . . [d]efendant has failed to show that his diagnosis requires his release. This [c]ourt also finds that . . . [d]efendant has not shown that his release would be in the best interests of society.

"As with sentencing, the scope of appellate review of a trial court's decision to grant or deny a Rule 3:21-10(b)(2) motion is whether the trial court abused its discretion." Priester, 99 N.J. at 137. On review of the record, we discern no abuse of discretion by the trial court.

11

As the judge acknowledged, there is no question defendant's Parkinson's diagnosis constitutes a change in circumstances in that he was not suffering from Parkinson's disease at the time of sentencing. The judge properly examined the record, including defendant's treatment needs and availability of treatment provided within the prison system, and found "there [wa]s no evidence to suggest that a reduction in the [d]efendant's sentence is required in order for him to travel to receive treatment at a 'tertiary university' in the event that evaluation or treatment at such an institution should become advisable." Moreover, the judge considered the severity of defendant's crimes, the magnitude of the sentence imposed, and the risk to the public were defendant released, reasonably determining those factors weighed against release.

We find insufficient merit in defendant's remaining arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2586-24